ANN WALSH BRADLEY, J. (dissenting).
¶41 An imbalance occurs when the middle class, the poor and the powerless are held accountable while the monied and powerful are able to act with impunity. The Wisconsin Legislature tried to address such an imbalance when in 1971 it enacted the Wisconsin Consumer Act (WCA).
*180 ¶42 Heralded as "the most sweeping consumer credit legislation [then] enacted in any state," its intent is "clearly ... to assist customers, particularly those of limited means, in combating unfair business practices." Kett v. Community Credit Plan, Inc., 228 Wis. 2d 1, ¶31 n.15, 596 N.W.2d 786 (1999) (citations omitted). To that end, the legislature mandated that if a debt collector gives the consumer a notice with an opportunity to cure a default, then the notice must fulfill certain criteria lest the debt collector not obtain the right to "go to court."
¶43 When Security Finance tried to collect a $1000 debt from Brian Kirsch, it did so after violating this notice provision of the WCA.[1] Specifically, it did not provide Kirsch with a statutorily-compliant notice of right to cure.
*415 ¶44 Nevertheless, the majority pardons Security Finance's error and allows it to escape accountability for putting Kirsch through a lawsuit that should never have been filed. In so doing, it arrives at a determination that is irreconcilable with the language of Kirsch's loan agreement and our case law.
¶45 The majority's conclusion also flies in the face of the stated purpose of the WCA, which "was designed to protect consumers from unfair, deceptive, and unconscionable merchant practices...." Credit Acceptance Corp. v. Kong, 2012 WI App 98, ¶8, 344 Wis. 2d 259, 822 N.W.2d 506. Instead, the majority creates a perverse incentive for debt collectors to sue consumers without providing the proper notice and right to cure. Many defendants will not fight back,[2] and when they do the suit will be simply dismissed without prejudice and the debt collector allowed to refile with absolutely no consequence.[3]
¶46 Unlike the majority, I would give the WCA the teeth the legislature intended it to have. In my *416 view, Security Finance's attempt to enforce a right with reason to know that the right did not exist constitutes a violation of Wis. Stat. § 427.104(1)(j).[4] Specifically, Security Finance attempted to enforce a right to go to court to obtain a judgment despite reason to know that absent compliance with the notice provisions of the WCA, such a right did not exist. *181 ¶47 The majority errs in determining that Kirsch fails to state a claim against Security Finance for violation of Wis. Stat. § 427.104(1)(j). This erroneous determination is inconsistent with the parties' loan agreement, our case law and the legislature's stated purposes in enacting the WCA. Accordingly, I respectfully dissent.
I
¶48 Kirsch entered into a consumer loan agreement with Security Finance whereby Security Finance loaned Kirsch $1,000. Majority op., ¶3. Subsequently, Security Finance alleged that Kirsch defaulted on the loan and brought a small claims action against him. Id. However, it did so without providing a statutorily compliant notice of right to cure default pursuant[5] to Wis. Stat. §§ 425.104 and 425.105.[6] Id.
*417 ¶49 Kirsch filed counterclaims against Security Finance, arguing that under the WCA it "has no right to file an action without first serving a sufficient notice of right to cure default." Id. Accordingly, based on this violation, he sought damages pursuant to the WCA. See id.
¶50 Security Finance voluntarily dismissed its complaint and moved to dismiss Kirsch's counterclaims. The circuit court granted the motion and the court of appeals affirmed. Id., ¶¶4-5. Upholding the dismissal of Kirsch's counterclaims, the majority determines that a debt collector's failure to provide a proper notice of right to cure default "does not constitute a sufficient basis for relief under ch. 427." Id., ¶2. Specifically, in the majority's view Security Finance was not attempting to "enforce a right with knowledge or reason to know that the right does not exist" within the meaning of Wis. Stat. § 427.104(1)(j). Id., ¶14.
*418 Instead, it opines that the right that Security Finance was enforcing was the right to collect an unpaid balance on a loan. Id.
II
¶51 The majority begins its analysis on the wrong foot when it misclassifies the "right" Security Finance is attempting to enforce. This initial misstep creates a skewed focus from which the majority opinion does not recover.
¶52 Wisconsin Stat. § 427.104(1)(j) prohibits debt collectors from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."[7] It is of *182 critical importance to correctly identify the "right" at issue because such identification frames the entirety of the analysis.
¶53 I begin with the plain language of the parties' consumer loan agreement. Under the heading, "RIGHTS UPON DEFAULT ," the parties' loan agreement provides as follows:
If you default and, after we send you a notice and opportunity to cure if required by § 425.105 Wis. Stats., we shall have the right to go to court and, to the extent permitted by law, obtain a judgment against you for the then unpaid amount of your debt.
¶54 This language is unambiguous. It indicates that the "right" identified is not simply the right to *419 collect the unpaid balance on the loan, as the majority determines, but the specific right "to go to court" to "obtain a judgment against" Kirsch.
¶55 Importantly, the right to go to court is a right that can be relinquished by contract,[8] and it is distinct from the underlying right to the unpaid balance of the loan in the event of a default. That is, the right to collect the unpaid loan balance is separate from the right to a particular forum for dispute resolution.
¶56 Security Finance had reason to know that it had no "right to go to court" to "obtain a judgment against" Kirsch because it did not satisfy the notice requirements set forth in Wis. Stat. §§ 425.104 and 425.105 and the parties' loan agreement. Under the WCA and the parties' loan agreement, the existence of Security Finance's "right to go to court" to "obtain a judgment against" Kirsch depended upon Security Finance sending statutorily-compliant notice and opportunity to cure default to Kirsch. As the majority acknowledges, Security Finance failed to do so. In the majority's words, Security Finance "jumped the gun." See majority op., ¶14.
¶57 Nevertheless, Security Finance went to court in a premature attempt to obtain a judgment against Kirsch. This is a quintessential example of attempting to enforce a right that does not exist in violation of Wis. Stat. § 427.104(1)(j).
*420 ¶58 Not only does the majority's conclusion contravene the language of the loan agreement, but it also is inconsistent with our case law, specifically Kett, 228 Wis. 2d 1, 596 N.W.2d 786. In Kett, a creditor filed replevin actions against consumers in Milwaukee County Circuit Court and obtained default judgments. Id., ¶3. However, Milwaukee County was not the proper venue under the WCA. Id. Subsequently, the creditor repossessed the consumers' vehicles by nonjudicial recovery based upon the invalid default replevin judgments. Id.
¶59 The consumers brought separate lawsuits in Waukesha and Walworth Counties against the creditor for its alleged violations of the WCA. Id., ¶2. Each included allegations that the creditor had engaged in prohibited debt collection practices within the meaning of Wis. Stat. § 427.104(1)(j). Id., ¶¶4, 7.
¶60 This court concluded that the consumers had stated a valid claim. It reasoned that creditors do not have a right to file suit when they have not complied with necessary preconditions set forth in the *183 WCA. Id., ¶¶43-50. More specifically, the creditor in Kett had reason to know that it had no right to pursue a replevin default judgment in Milwaukee County. Id., ¶50. Nevertheless, it obtained default judgments in the wrong venue and enforced them by nonjudicial recovery. Id., ¶16.
¶61 I find the majority's attempt to distinguish Kett unconvincing, and instead conclude that Kett's reasoning applies in this case. Like the creditor in Kett that had reason to know it had no right to venue its actions in Milwaukee County, Security Finance had reason to know it had no "right to go to court" to "obtain a judgment against" Kirsch until it provided notice that complied with the WCA and the parties' loan agreement. By prematurely filing suit without *421 providing that notice, Security Finance attempted to enforce a right it had reason to know did not exist in violation of Wis. Stat. § 427.104(1)(j).[9]
¶62 Unlike the majority, I would follow Kett and the plain language of the parties' loan agreement. Accordingly, I conclude that Kirsch stated a claim against Security Finance for violation of Wis. Stat. § 427.104(1)(j).
III
¶63 In addition to being inconsistent with Kirsch's loan agreement and our case law, the majority opinion is likewise inconsistent with the purpose of the WCA.
¶64 As amicus Legal Action of Wisconsin correctly emphasizes, the WCA was intended to be a *422 "sea-change" in the law.[10] The legislature's expressly stated purposes for enacting the WCA include protecting consumers "against unfair, deceptive, false, misleading and unconscionable practices" and "encourag[ing] the development of fair and economically sound consumer practices in consumer transactions." Wis. Stat. § 421.102(2)(b)-(c). At the time it was enacted, the WCA went "further to protect consumer interests than any other such legislation in the country," and was considered "the most sweeping consumer credit legislation [then] enacted in any state." *184 Kett, 228 Wis. 2d 1, ¶ 31 n.15, 596 N.W.2d 786 (citations omitted).
¶65 Accordingly, the legislature directed courts to "liberally construe[ ]" the WCA to promote its "underlying purposes and policies." Wis. Stat. § 421.102(1). In particular, the legislature provided that consumer remedies should be "liberally administered to the end that the customer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with [the WCA]." Wis. Stat. § 425.301(1).
¶66 Further, "[a] basic purpose of the remedies the legislature adopted in the Wisconsin Consumer Act is to induce compliance with the Wisconsin Consumer *423 Act and thereby promote its underlying objects." Kett, 228 Wis. 2d 1, ¶ 36, 596 N.W.2d 786 (internal quotations and citation omitted). As a corollary to this principle, without the threat of a WCA remedy, a debt collector has no incentive to comply with its provisions.
¶67 Disregarding the legislature's stated purpose, the majority allows Security Finance to escape accountability for its violation of the WCA. With impunity, Security Finance has put Kirsch through a lawsuit that it had no right to bring. By being forced to vigorously defend Security Finance's defective suit, Kirsch is most certainly not "in at least as good a position as if the creditor had fully complied with" the WCA. See Wis. Stat. § 425.301(1).
¶68 Simply dismissing the suit without prejudice provides no inducement to compliance with the WCA. See id. From a debt collector's perspective, why not file a lawsuit without providing the proper notice and right to cure? Often consumers will not respond.[11] In the rare instance when a consumer does fight back, the suit will simply be dismissed without prejudice and the debt collector free to refile without suffering any consequence.
¶69 In sum, I conclude that Kirsch stated a claim against Security Finance for engaging in a prohibited debt collection practice in violation of Wis. Stat. § 427.104(1)(j). Specifically, Security Finance attempted to enforce a right it had reason to know did not exist by attempting to exercise its "right to go to court" to "obtain a judgment against" Kirsch before providing proper notice of right to cure default as required by the WCA and the parties' consumer loan agreement.
*424 ¶70 For the reasons stated above, I respectfully dissent.
¶71 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

228 Wis. 2d 1, 596 N.W.2d 786 (1999).

State v. Dombrowski, 44 Wis. 2d 486, 502, 171 N.W.2d 349 (1969) (citing Black's Law Dictionary (4th ed.), 'venue' pp. 1727, 1728 ("[Venue] is a matter of procedure[.]")).

So was the court of appeals. It said the creditor "had a duty to know that Milwaukee County was not the proper place of trial," and "[a]s the creditor, it is in a much better position than the customer to investigate matters such as appropriate venue." Kett v. Community Credit Plan, Inc., 222 Wis. 2d 117, 135, 586 N.W.2d 68 (Ct. App. 1998). So it concluded the creditor had reason to know that it was enforcing a right it did not have in violation of Wis. Stat. § 427.104(1)(j). Id. at 134, 586 N.W.2d 68.

Wisconsin Stat. § 427.104(1)(j) provides in relevant part: "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, ... a debt collector may not: ... [c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist...."

Wisconsin Stat. § 425.104 sets forth:
(1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105 ).
(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

Pursuant to Wis. Stat. § 425.105(1),
A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205(6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103 ), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

Violation of this subsection not only entitles the consumer to the statutory penalties provided by Wis. Stat. § 425.304, but also allows the consumer to recover "damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by" the violation. Wis. Stat. § 427.105(1).

For example, parties may contract to resolve disputes in arbitration as opposed to a court. See, e.g., J.J. Andrews, Inc. v. Midland, 164 Wis. 2d 215, 223-24, 474 N.W.2d 756 (Ct. App. 1991) ("The purpose of arbitration is to obtain a speedy, inexpensive and final resolution of disputes, and thereby avoid the expense and delay of a protracted court battle.") (citations omitted).

This line of analysis was adopted by the federal district court in a case with facts very similar to those we address here. In Satran v. LVNV Funding, LLC, No. 17-cv-896-JDP, 2018 WL 2464486, at *1 (W.D. Wis. June 1, 2018), as in this case, the consumer alleged that the creditor commenced suit against the consumer without first providing the statutory notice of right to cure default, and in so doing, the creditor violated Wis. Stat. § 427.104(1)(j).
Framing the question as "whether a creditor has the 'right' to sue a debtor when it has not given notice of the right to cure default as required by section 425.105 [,]" the district court determined that the consumer stated a claim. Id. at *4, 6. It arrived at its conclusion by applying Kett, explaining that "Kett simply held that creditors do not have a right to file suit when they haven't complied with a provision of the WCA." Id. at *6.
Further, the district court observed that under the same framework espoused by the majority here, "courts would have to determine whether each provision of the WCA affects a creditor's right to file suit or merely provides the debtor with a complete defense once the creditor does file suit." Id. I agree with the district court that the WCA "does not allow for this distinction." Id.

See Ch. 239, Laws of 1971. For insightful commentary on the history of consumer protection law in Wisconsin and the drafting of the Wisconsin Consumer Act, see generally James D. Jeffries, Protection for Consumers Against Unfair and Deceptive Businesses, 57 Marq. L. Rev. 559 (1974); Thomas D. Crandall, The Wisconsin Consumer Act: Wisconsin Consumer Credit Laws before and after, 1973 Wis. L. Rev. 334 (1973); Edward J. Heiser Jr., Wisconsin Consumer Act: A Critical Analysis, 57 Marq. L. Rev. 389 (1974); and Jeffrey Davis, Legislative Restriction of Creditor Powers and Remedies: A Case Study of the Negotiation and Drafting of the Wisconsin Consumer Act, 72 Mich. L. Rev. 3 (1973).

See n.2, supra.